9 N.Y.2d 235 (1961)
Edward A. Schillawski et al., Appellants,
v.
State of New York, Respondent. (Claim No. 32769.)
S. E. B. Holding Corporation, Appellant,
v.
State of New York, Respondent. (Claim No. 32760.)
Court of Appeals of the State of New York.
Argued November 16, 1960.
Decided March 2, 1961.
Vincent A. O'Neil for Edmund A. Schillawski and others, appellants.
Joseph W. Bryan for S. E. B. Holding Corporation, appellant.
Louis J. Lefkowitz, Attorney-General (Jean M. Coon and Paxton Blair of counsel), for respondent.
Chief Judge DESMOND and Judges FULD, VAN VOORHIS and BURKE concur with Judge DYE; Judge FROESSEL dissents in an opinion in which Judge FOSTER concurs.
*238 DYE, J.
These appeals, by our permission, involve claims for damages arising out of an alleged de facto appropriation of land for use in the reconstruction of a State highway known as U. S. Route 20, which runs in an easterly-westerly direction between the City of Auburn and the Village of Skaneateles. The subject properties are located on a highway east of Auburn. In the course of the work done in 1951-1952, the two-lane concrete sections of the road were widened from 20 feet to 48 feet. The appellants claim that in performing this work the State encroached on lands owned by them.
In the Court of Claims the issue turned on whether the lands in question were within the boundaries of a pre-existing highway easement. The State demonstrated that U. S. Route 20, in the controverted area, originally came into existence as a part of the Seneca Turnpike pursuant to chapter 78 of the Laws of 1800, and the trial court so found. That statute provided for the establishment of the Seneca Road Company and authorized it to build the Seneca Turnpike from Utica to Cayuga Lake and westward to Canandaigua. The statute provided for a right of way six rods in width. The road was to follow as closely as possible the road of the existing Genesee road, also six rods in width.
The extensive proof offered by the claimants to show that the Seneca Turnpike was not improved to its full width does not afford any basis for extinguishing the right to the portion not so improved. Where a road has obtained its character as a public highway by user, its width is determined by the width of the improvement (People v. Sutherland, 252 N.Y. 86; cf. Beisheim v. People, 26 Misc 2d 684). But where the road has been laid out under a statute, it is the statute and not the user that determines the width (Walker v. Caywood, 31 N.Y. 51 [1865]). Nor does the failure of the State to occupy the full width, or to improve the road in the manner provided, constitute an abandonment of the easement of the unused portion (Highway Law, § 205; *239 Walker v. Caywood, supra; Beckwith v. Whalen, 65 N.Y. 322; Mangam v. Village of Sing Sing, 26 App. Div. 464, affd. 164 N.Y. 560). Indeed, the statute itself only required improvement over a width of 24 feet.
Marvin v. Pardee (64 Barb. 353), cited by the appellants, dealt with a situation arising under chapter 75 of the Laws of 1806, which was an amendment to the prior act, affecting the Seneca Road Company by requiring the Commissioners to file an accurate map or survey of lands acquired by them in the office of the clerk of the county through which the road passed. There being no proof of statutory compliance as to filing, the court found there was no satisfactory evidence of acquisition. Here, on the other hand, we deal with a situation arising under the Laws of 1800 and that, by its terms, required no filing. That point is, in any event, not decisive.
It was established as a fact, and so found, that Route 20 is the old Seneca Turnpike as laid out pursuant to chapter 78 of the Laws of 1800. Since the Seneca Turnpike was laid out under color of statute, it must be deemed that the State acquired a right of way by prescription to a width of 99 feet as provided for in the statute. This result is in accordance with the widely recognized rule that, where a highway is defectively laid out under color of statutory authority, it will be deemed to create a prescriptive right to the width prescribed by the statute, although greater than the extent of actual user (e.g., Pillsbury v. Brown, 82 Me. 450; State v. Auchard, 22 Mont. 14; McNab v. Town of Trenton, 55 N. S. 160, 63 D. L. R. 306, 13 B. R. C. 734; see 1 Elliott, Roads and Streets [4th ed.], § 193, and numerous cases cited). The statute was notice to all that the road was three rods in width on either side of the center line. In fact, these claimants' own abstracts of title identify this road as the Seneca Turnpike and describe the property conveyed as beginning in the center of the turnpike road subject to the easement for highway purposes. In this light the appellants' contention as to lack of payment is of no consequence. This being so, the alleged encroachment on the north being within the right of way, compensation was properly disallowed. The parcels lying on the south side of the highway were outside of the right of way. However, since the claimants had not established any measure of damages relating to that encroachment no award was made.
*240 The attack on the constitutional validity of the Laws of 1800, raised for the first time in this court, need not detain us. We may consider only issues raised in the court below (Flagg v. Nichols, 307 N.Y. 96, 99). Even if we assume, for sake of argument, that the statute is defective, nothing could be gained by these appellants in having the statute declared invalid since, in any event, the State had acquired a valid prescriptive right of way of 99 feet in width under color of statutory right.
The judgments appealed from should be affirmed, with costs.
FROESSEL, J. (dissenting).
I dissent and vote to reverse. Except as to an admitted 450-square-foot encroachment, for which no damages were allowed, the Court of Claims held that the State acquired a 6-rod, or 99-foot, right of way simply because the statute authorized the Turnpike Company (a private corporation for private gain [Matter of Rochester Elec. Ry. Co., 123 N.Y. 351, 356-357]) to lay out a road of that width. This position strikes me as completely untenable, since the same statute required the company to purchase or condemn needed land, where it was necessary to deviate from the Genesee Road. Seneca Turnpike (now a part of Route 20) did, in fact, deviate from the Genesee Road along the route now in question; and the State introduced no evidence whatever that the company had purchased or condemned land, along the deviation, to a width of 99 feet.
I agree with the reasoning of the court in Marvin v. Pardee (64 Barb. 353, 358) that the Seneca Turnpike statutes were not "intended to effect a transfer to the company of the title to land, which it had not obtained in one of the prescribed methods. The title to land is not thus `adjudged and taken' from one party and vested in another" (emphasis in original). Whether or not the applicable statutes required the Turnpike Company to file a map or survey, they all prescribed two methods for the acquisition of needed property, namely, purchase or condemnation. Hence the State was obliged to show that a 99-foot right of way had actually been laid out and pursuant to such statutory authorization.
The prevailing opinion holds that the State acquired a 99-foot right of way by prescription, and notwithstanding the fact that it never used anywhere near 99 feet. In 1912 the road was a narrow, two-lane dirt road, later covered by gravel; in 1928 it *241 consisted of a macadam pavement 12 feet in width. After the county, pursuant to State authority, acquired right of way parcels in the vicinity of appellants' property, all of which, as found by the trial court, were located in whole or in part within the 99-foot right of way, the county turned the highway over to the State, when it was widened to 20 feet, and remained so until 1952. Although the majority do not question the general rule that property may be acquired by prescription only to the extent it is actually used, they point to an exception apparently recognized in Montana and Maine, and reason that the company having acted "under color" of a statute authorizing the laying out of a 99-foot right of way, it follows that the State "acquired a right of way by prescription to a width of 99 feet as provided for in the statute."
The difficulty with this argument is that the statute did not give the company a 99-foot right of way, but simply authorized it to lay out a road that width and acquire the necessary land by purchase or condemnation. To say that the State can acquire a 99-foot right of way by prescription simply by authorizing a road that width, and then having the private road company deviate and lay it out at a considerably lesser width without compensation or condemnation, is to sanction bald confiscation and violate appellants' constitutional rights. This statute could not constitute "notice" as the majority maintain in justification of the confiscation here sanctioned. The only landmark mentioned in the statute which could serve to inform one of the route of the proposed highway was the Genesee Road. But at issue here is a deviation from that road, the nature and course of which deviation the statute in nowise indicates. Nor do any of appellants' title documents militate against his claim. Walker v. Caywood (31 N.Y. 51) is clearly inapposite in this case.
As to the issue of abandonment, we do not reach it if the State failed to prove it or its predecessors ever lawfully acquired a 99-foot right of way. While it may be argued that the State in failing to lay out a lawfully acquired road to its full authorized width does not thereby lose a portion of it by abandonment, we are here faced with a situation where the road was not lawfully acquired; hence nonuser is fatal (Matter of City of New York [Ludlow Ave.], 164 App. Div. 839; Gucker v. Lewis, 249 App. Div. 858; Cobb v. County of Monroe, 8 A D 2d 755). As already noted, no portion of the road here involved was ever opened to *242 its full width as authorized 150 years ago, there was a definite deviation, no map or survey was ever filed showing a 99-foot easement, the visible markers on the road for over 20 years preceding the 1952 reconstruction indicated a two-lane road bounded by fences, and the county, pursuant to State authorization, purchased land in 1928 located within the 99-foot right of way now claimed by the State. If an abandonment  assuming it was involved here  was not made out, then it seems to me it could never be made out.
Accordingly, the judgments appealed from should be reversed, and the case remitted to the Court of Claims for the assessment of damages, with costs to appellants.
In each action: Judgment affirmed.